GRAYSONIA-NASHVILLE LUMBER COMPANY *v.* WHITESELL.

Opinion delivered October 30, 1911.

1.  MASTER AND SERVANT—DISCOVERED PERIL.—Where, in an action against a master for death of a servant, there was evidence tending to prove that a fellow-servant discovered deceased's peril in time to

avoid injuring him, it was not error to refuse to direct a verdict for the defendant. (Page 425.)

2.  SAME—INJURY BY RUNNING OF TRAIN—PRESUMPTION.—Where a train-man was killed by the running of his train, it was error to instruct the jury that there was a presumption that the decedent's death was caused by the negligence of the railroad company. (Page 426.)

Appeal from Howard Circuit Court, *Jeff T. Cowling*, Judge; reversed.

### STATEMENT BY THE COURT.

Appellees brought this suit against the appellant to recover damages on account of the death of J. R. Whitesell, which it is alleged occurred while he was conductor and brakeman of a logging train on appellant's line of railroad. At the time the accident occurred, the train was going at a slow rate, some two or two and a half miles an hour.

Chas. Belcher and Bank Roe were sitting on the back end of the tender facing Whitesell, when the accident occurred. Whitesell was standing on the sill, or running board, of the tender, and started to step across to a log car. He placed his left hand on a log lying on the car. His hand slipped, and he fell between the cars. He was dragged a short distance, about one hundred and eight feet, and was killed. Roe was on the same side of the engine as Collier, the engineer, and as soon as Whitesell fell he turned his face toward the engine and began to halloo and to signal to the engineer. After he had hallooed a few times, the engineer stuck his head out the window, and the engine was stopped. He does not know whether the engineer stopped it or not.

The testimony of both Belcher and Roe shows that Roe hallooed loudly, and that both of them were trying to flag the train.

Buster Willis, a negro man, was sitting on the top of the tender at the front end. He called to the fireman and said, "I believe that man fell." R. E. Gold, the fireman, testified:

"J. R. Whitesell was my brother-in-law. When Buster Willis called to me, I jumped on the seat box and looked out. I saw Whitesell's head between the tender and the wheels of the first car. I jumped off the box and said: 'I believe we have killed our conductor.' I never took time to see what the engineer did, but ran at once to Whitesell. He had hold of the

bolt that held the arch bars together, with his right hand, and was grabbing at something with his left hand. The arch bar goes from the oil box on the wheel towards the outer edge of the wheel. It holds up the end of the axle, and holds the box to its place. The bolt that holds this arch bar together is about thirteen inches long. . I could not get him out. I could see the wheel had caught his clothes, but I could not tell as to his body. When I found that I could not get him out, I ran back to the engine and called to the engineer to stop at once, that we were killing our conductor. The engineer fell over in the window and commenced to halloo for Wepfer, the superintendent. I then jumped up into the engine, and stopped it myself. The train moved ten or twelve inches after I got up there and stopped the engine. Whitesell was dragged one hundred and seven feet from the place where he fell. I helped to measure this distance. I judged as to the point where he fell off by seeing his hat lying there."

The jury returned a verdict against the appellant, and from the judgment rendered, it has appealed to this court.

*Sain & Sain, T. D. Wynne* and *T. D. Crawford* for appellants.

1. The court should have directed a verdict for the appellants. The testimony shows that the train was moving at a very slow rate—two and a half or three miles per hour—that there was no jar or jolt which caused deceased to lose his footing, and that his death was due to his hand slipping when he attempted to take hold of a log lying in the car. Decedent was not required to cross the loaded cars to do his switching. He could readily have stepped off of the slowly-moving train, and thus have escaped injury. There can be no reasonable doubt that the injuries were due either to Whitesell's own negligence or to one of those unforeseeable accidents that are liable to occur for which no liability attaches to the railroad company. 48 Ark. 474; 213 U. S. 1; Pollock on Torts, (8 ed.,) 41; 76 Ark. 436. There is shown no element of wantonness, wilfulness or gross negligence on the engineer's part which would render the appellant liable upon discovery of Whitesell's peril. 76 Ark. 14; 69 Ark. 382; 47 Ark. 497. See also Labatt, Master & Servant, §§ 835, 837.

·2.    Negligence is not presumed to arise in this case from the occurrence of the accident, and the court erred in charging the jury that the law raises the presumption that Whitesell's death was caused by appellant's negligence.   26 Cyc. 1411; 179 U. S. 663; 44 Ark. 524, 529; 46 Ark. 567; 74 Ark. 22; 79 Ark. 437; *Id.* 80; 81 Ark. 277; 90 Ark. 331; 91 Ark. 393; 89 Ark. 50; 87 Ark. 190; 87 Ark. 321; *Id.* 217; 82 Ark. 372.

*W. P. Feazel,* for appellee.

1.    The court was correct in not directing a verdict for appellant.   There was evidence from which the jury might well have found that when Whitesell fell he grabbed the arch bar and was by reason of his strength able to keep his body out of reach of the car wheels until he had been carried about 100 feet from the place where he fell; that immediately after he fell the engineer was informed of his perilous condition, and not only did not make any reasonable effort to stop the train but made no effort at all; that deceased received no injuries until within a few feet of the point where the train was stopped, and that if the train operators had exercised ordinary care to stop the train after discovering his peril, they could have stopped it in time to have avoided the injury.   65 Ark. 619; 69 Ark. 382; 74 Ark. 478.

2.    There was no error in giving the second instruction on the question of presumption of negligence.   A *prima facie* case of negligence is made against a railroad company by proof of injury from a moving train.   Kirby's Dig., § 6773; 65 Ark. 238; 93 Ark. 32; 83 Ark. 217; 87 Ark. 308; 88 Ark. 12.   This statutory presumption is   held to be for the benefit of the employees of the company as well as others.   83 Ark. 61; 81 Ark. 275; 88 Ark. 207.

HART, J., (after stating the facts.)   It is earnestly insisted by counsel for the appellant that the evidence is not sufficient to warrant the verdict.   It is conceded by counsel for appellee that in the discussion of this issue the question is, did the engineer discover or was he apprised of the deceased's perilous condition? and, if so, was he apprised in time to have avoided killing him by exercising ordinary care?   At the time the accident occurred the train was moving slowly, the engineer intending to stop it at a switch near by for the purpose of picking

up some cars loaded with bolts.   The jury might have inferred that the engineer heard the loud screams of Roe, and saw him signaling him to stop, or that he heard the remarks made by Willis to the fireman, or by the fireman himself.   It will be remembered that the fireman said when he first jumped off the engine, "I believe we are killing our conductor."   The fireman also said that when he came back and called to the engineer to stop the engine at once, the engineer fell over on his seat, and that the fireman had to then go up and stop the engine.   From the testimony the jury might also have found that the engineer was apprised of Whitesell's danger in  time to have averted killing him.   The fireman testified that when he got to Whitesell he could not tell whether the wheel had taken hold of his body, but could tell that his clothes had been caught in the wheel.   He also said that when he first got there Whitesell had hold of the bolt that held the arch bar together with his right hand, and was grabbing at something with his left.

Therefore, we hold that the court was right in not directing a verdict for the defendant.   *Griffie* v. *St. Louis, I. M. & S. Ry. Co.*, 80 Ark. 186; *St. Louis, I. M. & S. Ry. Co.* v. *Hill*, 74 Ark. 478.

2.   The court instructed the jury that the law raised the presumption that the decedent's death was caused by appellant's negligence.   This was error.   The burden was on the appellee to show that the engineer discovered the perilous situation of the deceased in time to have avoided killing him, and that he failed to use ordinary care to avert the injury. *St. Louis & S. F. Rd. Co.* v. *Townsend*, 69 Ark. 380; *Chicago, R. I. & P. Ry. Co.* v. *Bunch*, 82 Ark. 522; *Adams* v. *St. Louis, I. M. & S. Ry. Co.*, 83 Ark. 300; *St. Louis S. W. Ry. Co.* v. *Jackson*, 91 Ark. 14.

Moreover, in the case of the *Kansas City Southern Ry. Co.* v. *Cook*, *post* p. 467, we held that where a servant is engaged in the operation of a train, and is injured by the train, there is no presumption of negligence against the master, but the burden is on the servant to show negligence.

For the error in giving the instruction indicated, the judgment will be reversed, and the cause remanded for a new trial.