INTERNATIONAL HARVESTER COMPANY OF AMERICA *v.* HAWKINS.

Opinion delivered February 3, 1930.

J. A. Comer and *Watkins & Pate,* for appellant.

*George W. Emerson* and *W. R. Donham,* for appellee.

MEHAFFY, J. This action was begun in the Pulaski Circuit Court by appellee, who alleged in his complaint that the appellant was a corporation engaged in the business of selling harvesting machines, parts for machinery and other merchandise, and has a place of business, stock of parts of machines and machines and machinery, and other property in the city of Little Rock.

Appellee was employed by defendant in its place of business, and he alleges that, pursuant to directions of appellant's foreman, he was engaged in taking inventory of parts which were located across the walls of the building, said parts being in various bins. The appellant provided a chair upon which appellee was to sit while engaged in such duties, the chair being attached to the bins several feet from the floor; that appellant and its servants negligently and carelessly furnished a chair and parts of said bin upon which said chair was attached, and appliances which were insecure, insufficient and unsafe for appellee to sit upon while discharging his said duties, and that, on account of this condition, while appellee was in the exercise of care for his own safety, said part upon which said chair was attached broke and plaintiff fell several feet, and that as a result of the fall he was severely injured.

Defendant answered, denying the material allegations of the complaint, pleaded assumed risk, and alleged that the accident complained of by appellee was one of risks and hazards which he assumed in his contract of employment.

It appears from the testimony that the appellee was at the time of the injury engaged in making an inventory. The parts and merchandise were in small bins against the wall. A strip of timber was nailed to the bins at the bottom part, and this strip served as a place to fasten the chair, and also to prevent the parts from coming out. While the appellee was in the discharge of his duties, making an inventory and using this chair, the strip of board to which the chair was attached at the bottom of the bin broke, and caused the appellee to fall and receive the injuries of which he complains. There is some conflict in the evidence as to whether the board simply broke or whether it broke and also the nails pulled out; one witness testifying that the nails were pulled loose. At any rate, the board broke, and appellee fell and received the injuries complained of.

Appellant first argues that the burden is upon the appellee to show not only that the appliances furnished him were unsafe and defective, but that the master had notice of such unsafe condition or defect, or could by the exercise of reasonable care have discovered same.

This court has many times held that, in order to recover because of the failure of the master to furnish an employee with safe appliances or a safe place to work, the burden is upon the complaining party to establish the fact that the appliances or place was unsafe, and also that the master either had notice of the unsafe condition or defect or could, by the exercise of ordinary care, have known of the defect. A master is not required to furnish an absolutely safe place to work, but he is required to exercise ordinary care to provide safe appliances and a safe place to work.

Appellant cites many authorities supporting the rule contended for, but it is unnecessary to review them here because there is no dispute or controversy about this being the well established rule. One of the cases cited and relied on by appellant in this connection is the case of *St. L. S. F. Ry. Co.* v. *Smith*, 179 Ark. 1015, 19 S. W. (2d) 1102, in which the court stated:

"Juries are not permitted to base verdicts on mere conjecture or speculation. There must be substantial testimony of essential facts, or facts which would justify a reasonable inference of such essential facts, on which to base a verdict, before it will be permitted to stand."

This proposition of law is not only correct, but has been repeatedly announced by this court. Juries must base their verdict on facts, and not on mere conjecture or speculation. But in the instant case the undisputed facts are that the strip of board which broke was constantly used for the very purpose for which the appellee was using it at the time of the injury; that it broke, causing appellee to fall and receive his injuries. There is no conjecture about this, and no speculation about it. It is an undisputed fact. If there was a defect that caused the break, then, under the evidence in this case, the appellant was liable because there is no contention and no claim that it was such a defect as was obvious or might be discovered without inspection. In other words, there is no contention that appellee might have discovered the defect. Moreover, it was not the duty of the appellee, the servant, to make inspection, but it was the master's duty. It is not only the duty of the master to use ordinary care to provide safe appliances, but it is also its duty to exercise ordinary care to maintain them in a safe condition; to make inspection, if necessary, to ascertain the condition, and it is not the duty of the servant to make inspection.

It is next contended by the appellant that negligence cannot be inferred merely from the injury. This is also a rule of law so well established that we need not cite authorities in support of it. While negligence cannot be inferred merely from the injury, negligence may be inferred from facts shown in evidence. And the facts here are sufficient to justify the jury under proper instructions to find that the appellant was guilty of negligence, and that this negligence caused the injury.

It is next contended that appellee assumed the ordinary risk of his employment. This is correct. The serv-

ant, when he enters into the employment, assumes all of the ordinary risks and hazards of the employment, but he does not assume the risk of negligence of the company for which he was working or any of its servants. And where a servant engaged in the performance of his duty for the master, in the exercise of ordinary care for his own safety, is injured, whether by the negligence of the company for which he works or by the negligence of any other servant of the company, he is entitled to recover. *Aluminum Co. of North America* v. *Ramsey,* 89 Ark. 522, 117 S. W. 568.

If the strip of timber which broke causing appellee's fall and injury was the strip provided by the master to be used in the manner in which it was being used by the appellee at the time, this was sufficient to justify the jury in finding that the master was negligent. While negligence cannot be presumed, but must be established by the evidence, it is not established by witnesses saying it is negligence, but it is established by showing facts from which the jury may say it is negligence. It is established by evidence of facts which show the negligence.

There is no question in this case about the failure of the court to give any instructions requested by appellant. In fact, the appellant does not set out any of its instructions, whether given or refused by the court, and in appellant's motion for a new trial no suggestion is made that the verdict is excessive.

Appellant argues in his brief that, if there is any liability at all, the appellee's measure of damages would be extremely small. He does not, however, make the amount of damages, or the fact that he claims it was excessive, a ground for its motion for a new trial.

Witness August Kahler, a general contractor, testified that the board was perfectly sound and safe, and he also said: ''The nails would have to give away before the board can break, that is certain, but the sound of the nails giving can be heard, the nails would squeak as it come out; that took quite a little jerk to pull that loose;

this nail, I presume, was put in afterwards, when it was nailed back up because the original nails were six penny; there were two originally nailed into the board.''

This witness also said, in speaking about it breaking by reason of the man's weight, that he did not know. He was asked if the thing broke or was pulled off by a man's weight, how he would account for it, and he simply said he did not know.

The circumstances and evidence show that either the board was insufficient, or that it was insufficiently nailed. In either event, the master was guilty of negligence if he knew the condition or, by the exercise of ordinary care, could have known it. If witness Kahler is correct about the nails having to pull out before the board would break, then the jury were justified in reaching the conclusion that an ordinary inspection would have discovered the defect.

Appellant urges that the court erred in giving instruction No. 2 because, he says, it was given without testimony to justify it, and, for that reason, it was confusing. This is the only error urged to the instruction by appellant. Instruction No. 2 was as follows:

''The defendant has interposed, as a defense to plaintiff's cause of action, the doctrine of assumed risk, that is that plaintiff by proceeding with the work assigned to him by defendant, assumed the risk of being injured under the circumstances, and that the defendant would not be liable to him for injuries, in the event he should be injured, and you are instructed that while plaintiff, as a matter of law, assumed the risks ordinarily incident to the work he was doing, yet he did not assume the risk of the negligence of defendant, or any of its employees in failing, if there was such failure, to exercise ordinary care to provide plaintiff a reasonably safe place to work, unless plaintiff was aware that such place was unsafe, or unless such danger was so apparent as to be observed by an ordinary prudent person, and if, therefore, you find that defendant failed to exercise ordinary care to pro-

vide plaintiff with a reasonably safe place to work, and find that plaintiff was not aware of such place being unsafe, if it were unsafe, and that the danger was not so apparent as to be obvious to a person of ordinary prudence, then the plaintiff would not assume the risk, and you cannot find for defendant on the ground of the assumed risk.''

This was a correct instruction, and there seems to be nothing in it or about it, that would confuse the jury.

Appellant also urges that the court erred in giving instruction No. 4. Its special objection to this instruction is that appellant was not responsible for latent defects that were not open to observation in the exercise of ordinary care. We do not agree with appellant in this contention. The correct rule is that the master is not responsible for latent defects that were not open to observation in the exercise of ordinary care, or that would not be discovered by a proper inspection. Whether the defect was open to observation or not, and whether it was known to the employer, if it was such a defect as was discoverable by a careful inspection, then the master was guilty of negligence if he failed to make the proper inspection. The servant is required to take notice of obvious risks, and all the usual and ordinary risks, but he is not required to inspect, and he does not assume any risk resulting from the negligence of the master or other servants unless he knows of such risk. He assumes the ordinary and usual risks of his employment, whether he knows them or not, but he has a right to assume that the master and all the other servants will exercise care, and he has the right to act on this presumption unless he knows of the negligence. No. 4 was a correct instruction, and was not open to the objection urged by the appellant.

It would serve no useful purpose to set out the evidence in full. We have carefully considered all of the evidence, and reached the conclusion that there was sufficient evidence of negligence to justify the submission of the case to the jury.

There is substantial evidence upon which to base the verdict, and the judgment of the circuit court is affirmed.