RICE & HOLIMAN *v.* HENDERSON.

Opinion delivered March 2, 1931.

356

*Caraway, Baker & Gautney,* for appellant.

*Dudley & Barrett* and *Huddleston & Hughes,* for appellee.

MEHAFFY, J. Rice & Holiman is a partnership operating a gin at Lepanto, Arkansas. On December 29, 1928, the appellee, while in the employ of the appellants, was engaged in freeing lint cotton which had hung in the ribs of a breast machine and his hand was caught in the saws and cut off.

In order to perform the duties he was at the time engaged in, it was necessary to raise the breast free of the saws, and this was done by the use of a lever at the right side of the breast machine. The lever was about 18 inches off the floor. By moving said lever to a position on the floor and throwing it into a catch, the breast was raised, the saws disengaged, and the lint cotton could then be freed without coming in contact with the saws. It was necessary to perform this duty several times a day.

At the time of the injury the appellee used the lever in the manner indicated and with a small stick he was engaged in raking out and freeing the lint cotton. Appellee's right hand was caught in the machine and cut off.

It is alleged that the appellants were negligent in failing to furnish a reasonably safe place to work and because of the defective condition of the lever, cogs, and other machinery, and the unnecessary and violent vibration of the power plant, and that this negligence caused the breast to fall, catching appellee's hand.

Appellants admitted that appellee was in their employ and admitted the injury, but denied all other material allegations in the complaint, pleaded contributory negligence, and that appellee assumed the risk.

Appellee was, at the time of the injury, 23 years old, and testified that he was in the employ of the appellants and did anything he was told to do; that he was not the foreman at the time of the injury; that Mr. Rice, one of the employers, told the employees what to do; he had been employed for some time around gins and had been employed at this gin for about six months; he was receiving forty cents an hour and averaged ten or twelve hours a day. The injury was caused by the gin breast falling on his hand. The gin breast is the place where cotton is separated from the seed. There is a roll and two sets of ribs. The cotton comes between the two sets of ribs on the roll. It was appellee's duty to take a stick about six or eight inches long and rake this cotton out between the ribs so the seed would pass through the cotton conveyor in the bottom of the ribs. When it gets stopped up, the seed cannot fall out. It was appellee's job to do this. It was not customary to stop the gin in order to do this work. You just raised the breast up so the saws would not be in the way, and the breast fell on his hand. When you press down on the lever, you raise the breast. It does not stop the saws from revolving, but raises the breast off the saws. The saws keep running but the breast is cleared of the saws. The gin can be stopped by pulling the clutch out. The lever is about eight or ten inches long and stood up to the right of the gin breast, and by pulling this lever down to the floor it raises the breast clear of the saws.

Witness testified that there were no saws in the way, but the little piece being worn caused it to trip and fall. The piece witness was looking at was new, had never been used. It fastened on the lever so you can raise the breast up, and when the lever pulls this little piece raises on edge. It, being worn, set over a little bit, and that caused it to fall. It was rusted and worn and had not been run the fall before then. He had not been warned by the defendants of the worn condition.

A piece of iron exhibited by witness is called a toggle gear. Witness said there was a little vibration, not noticeable, the usual cotton gin vibration. In unchoking the gin after raising the breast, it was necessary for witness to put his hand up between the ribs where the cotton hung between the ribs to keep the seed from coming out. You could see the toggle gear in place but could not see its worn condition. Witness did not know its worn condition. The breast fell off on witness, throwing him backwards, and his hand was left in the machine. Appellee was an experienced ginner but had had only about six months' experience with the machinery on which he was injured.

The toggle gear or machinery claimed to be defective was introduced in evidence, and photographs were also introduced. During the time appellee operated this gin, Mr. Rice, one of the partners, was around and saw the way he did it. He was doing it the same way at the time he got hurt. The part that was defective was the rivet that goes through the toggle. By looking at it you could not tell that it was worn.

Mr. E. M. Perry testified that he had worked around gins, been foreman in charge of gins, and had built gins; operated the Rice & Holiman gin its first season. He testified about the lever and breast and about the toggle gear, and the manner in which the breast was raised. If the toggle gear was worn, it would not hold perfect, and the vibration would cause it to crash off and cause the gin breast to fall. If the toggle gear was defective, very few people could have detected it.

Dr. Ragan testified as to the extent of the injury.

C. H. Rice, one of the defendants, testified that appellee was employed as a ginner; that he was foreman and in charge of the gin; had a right to do what he thought best; had a right to stop the machinery when he wanted to; it was his duty to repair any machinery needing it. The toggle and lever introduced was the same that was on the machine at the time; is still in use, the same toggle. Knew nothing of it being worn; did not become loose; the rivet could not wear so that the vibration of the gin could cause the breast to fall; had been operating the gin since 1925. If the bolt in the toggle was loose, you could ascertain it by working it back and forth in your hands; the bolt being worn would not cause the breast to drop; it could not fall if the lever was pulled down to the floor. If the lever is pulled down to the floor, raising the breast, there is no way the breast can drop except to raise the lever; it is impossible for it to fall. If the breast was partly raised, it could have fallen. The breast weighs 250 or 300 pounds. It is impossible to eliminate all vibration in the gin. The gin stands rest in concrete foundations. The piece of concrete is 36 feet long, 48 inches wide, and 34 inches deep, solid with a trough in the center for the seed conveyor. The gin stands are bolted to the foundation, the bolts are set into the concrete when it is made. There is very little vibration. This witness' evidence was corroborated by the evidence of W. B. Holiman and U. S. Holiman.

The engineer, Charles Johnson, was in the building where he could see appellee when he was hurt; was ten or fifteen feet from him. Witness came through and the gin stand was choked. He asked appellee if he wanted to shut down and appellee said "No." Was looking right at appellee when he was caught. Appellee squatted down and put his hand under the gin breast. When it caught him, he pulled back, and, in so doing, pulled the gin breast off; could have stopped the engine in two or three minutes. It is frequently stopped while the gin is being

unchoked. Appellee told witness he did not want it stopped. When the lever and toggle gear are used in raising the breast, you don't have to shut down the gin. Appellee had a stick in his hand, squatted down and reached under the gin with it; had on a glove. The injury happened about 10:30 A. M.

Lorraine Jackson testified that what first attracted his attention was that the gin breast fell off and knocked appellee out in the floor. His hand was off then; had to get pliers to get his fingers out of the nozzle.

C. H. Rice was recalled, introduced a number of photographs in evidence and explained the photographs and toggle joint. Parts of the machinery were introduced in evidence and exhibited.

The jury returned the following verdict: ''We, the jury, find for the plaintiff and assess his damages in the sum of $1,500, with hospital and doctor's bills to be paid by defendants.'' This verdict was signed by ten of the jurors.

The court thereupon rendered judgment for the sum of $1,745 with 6 per cent. interest from date until paid.

Motion for new trial was filed and overruled, and the case is here on appeal.

It is first insisted by the appellant that the physical facts show there is no defect in the toggles, and the breast could not have fallen had the lever been depressed to the floor, and it is claimed that there is no evidence tending to show that the left toggle was defective, and, unless it was defective, the breast could not have fallen if properly raised. At the time of the injury appellee had been working at this gin for about two weeks. He had been working, however, for the appellants for about six months. He testified that the rivet in the toggle gear was rusty and worn, and that this defect, together with the vibration of the gin, caused the gin breast to fall.

E. N. Perry, who had worked at this gin breast, and who understood machinery of this kind, testified that, if the toggle gear was worn, it would not hold perfect, and

the vibration would cause it to crash off and cause the gin breast to fall.

It therefore appears from this evidence that the toggle gear might be so worn that, with the slight vibration of the gin, the breast would fall. This evidence is contradicted by appellant's witnesses, but the question on the conflicting evidence was properly submitted to the jury. The gin breast and toggle gear were also exhibited and introduced in evidence. The jury had an opportunity to and did examine these things.

The undisputed proof shows that this gin had been operated 3 or 4 years, and the appellee testifies that it was not used the season before and was permitted to rust.

While Mr. Perry testifies that, if the toggle gear was worn, as testified by the appellee, it would cause the gin breast to fall; he does not testify that there was any defect. He did not know whether there was a defect or not. The only evidence that there was any defect was the evidence of the appellee. He stated that the rivet in the toggle gear was worn and rusty. His testimony, however, also shows that one could not discover this while the machinery was in place, and that he did not know there was any defect until after the injury. He could, of course, only know about the rust and the defect by examining it after the injury. If he did this, his evidence fails to show it. The toggle that he testified about and exhibited was new. He said he was unable to get the original toggle gear because it had been removed. There was therefore no evidence that the machinery had rusted or that the toggle gear had become worn and defective by any witness who said he had examined the toggle gear.

This court has many times held that, in order for a servant to recover because of the failure of the master to furnish him with safe appliances or a safe place to work, the burden is upon the complaining party to establish the fact that the appliances or place was unsafe, and also that the master either had notice of the unsafe condi-

tion or could, by the exercise of ordinary care, have known of the defect. A master is not required to furnish an absolutely safe place to work, but he is required to exercise ordinary care to provide safe appliances and a safe place to work. *International Harvester Co.* v. *Hawkins,* 180 Ark. 1056, 24 S. W. (2d) 340.

While it is the duty of the master to exercise ordinary care to provide a safe place to work and safe appliances and his duty to exercise ordinary care to inspect same, and while the servant has the right to assume that the master had performed his duty, it is also true that the master is presumed to have performed his duty, and no presumption of negligence arises from the mere happening of the accident which caused the injury. It is not sufficient for a servant to show that he was injured and that the injury resulted from a defect in the machinery; but he must go further and establish the fact that the injury happened because the master did not exercise proper care in the premises. *Bryant Lumber Co.* v. *Stastney,* 87 Ark. 321, 112 S. W. 740; *St. L. I. M. & S. R. Co.* v. *Gaines,* 46 Ark. 555; *Graysonia-Nashville Lbr. Co.* v. *Whitesell,* 100 Ark. 422, 140 S. W. 592; *K. C. Sou. Ry. Co.* v. *Cook,* 100 Ark. 467, 140 S. W. 579; *Wheeler* v. *Ellis, ante* p. 133.

While the verdict of the jury is conclusive here on conflicting evidence, if there is any substantial evidence to support it, we think the evidence of the appellee, that he could not discover the defect before the injury, and his failure to testify that he had seen it since that time, is insufficient to support the verdict of the jury. As we have said, he must not only show that the master was negligent, but he must show that the negligence of the master caused his injury.

It was, of course, not the servant's duty to inspect the machinery, but this was the duty of the master, and the evidence is in conflict as to whether there was a defect. Both the question of the master's negligence and the contributory negligence of the servant are questions of fact for the jury.

It is next contended that the court was without authority to add $245 to the judgment, and that the verdict returned by the jury was improper. The verdict of the jury should have been for a specific amount, but, if the court had added $215 instead of $245, the case would not be reversed because of the form of the verdict. The undisputed proof showed that the doctor's bill was $215, but there was no evidence whatever as to the amount of the hospital bill. It was therefore improper to add the hospital bill or whatever the item was, making the difference between $215 and $245.

Appellant also urges a reversal because the court refused to give instructions Nos. 11 and 12. No. 11 reads as follows: "If you find from the evidence that just prior to the time plaintiff was injured, defendants, through their servant or employee, asked plaintiff to be permitted to stop the machinery until the gin could be cleaned, and plaintiff told said defendant that it was unnecessary, and that he could remove the material from the gin without stopping it, and that as a result of such action his hand was caught in the saws of the gin and injured, then you are instructed that he assumed the risk of injury and cannot recover."

No. 12 was to the same effect.

Instruction No. 13 reads as follows: "You are instructed that if plaintiff was warned not to undertake to clean the choked cotton and seed from the gin while it was running, and that he disregarded such warning and undertook to unchoke said gin while same was running, and that as a result of such action his hand was caught in the saws of the gin and injury resulted, then you are instructed that plaintiff assumed the risk of such injury and can not recover."

We think the court was correct in its refusal to give these instructions. It was not the duty of the appellee to have the gin stopped in order to unchoke it. He performed his duty in the usual way, as he had a right to do. The evidence shows that this was the customary way

to unchoke the gin breast, and, while the gin had been in operation 3 or 4 years, there is no evidence that the breast had ever fallen before.

Instruction No. 13 submitted to the jury the question of appellee's contributory negligence, and the jury were told that if he were guilty of any negligence which contributed to the injury, that he could not recover. This feature of the case, however, was covered by the court's other instructions which were given.

The court gave instruction No. 8, which is as follows: "If you find that plaintiff in undertaking to free the gin from its choked condition, and that in doing so he was careless and negligent, and that, by reason thereof, he was injured, then he cannot recover, although you may find that defendant was also negligent."

The question of assumed risk was also submitted to the jury. When one enters the employ of another, he assumes all the risks or hazards ordinarily incident to the employment, and the master is not liable for injury resulting to the servant if the injury to the servant was caused by one of the ordinary and usual risks or hazards of the employment; but the servant does not assume the risk of the negligence of the master for whom he works, unless he knows of such negligence.

If there was a defect, as claimed by appellee, which could not be discovered by him in the performance of his duty, but which defect would have been discovered by proper inspection, the failure to discover it would be the negligence of the master, and the servant would not assume this risk. The appellee was injured, suffering the loss of his right hand. Perry swore, as we have said, that if the toggle gear was defective this would cause the breast to fall. The appellee testified that it was defective, but there was no evidence either by him or any one else that it had been examined after the injury or at any other time, and the defect discovered or seen. Appellee may have examined the toggle gear and rivet after the injury, but he does not so testify, and since

he testifies that he could not see it before the injury so as to tell it was defective, there was not sufficient evidence to sustain the verdict.

The judgment will therefore be reversed, and the cause remanded for a new trial.

McHANEY, J. I concur in the judgment of reversal, but am of the opinion that the case should be dismissed on a ground not discussed in the opinion of the majority. The undisputed evidence shows that appellee's fingers were found in the cotton chute, and the physical fact is that they could not have gotten there unless he had his hand behind the back set of ribs. If he had his hand between the two sets of ribs, his fingers could not have been carried back into the cotton chute. Having voluntarily put his hand behind the back set of ribs to unchoke them, he is bound to have known that he would be injured if he came into contact with the closely revolving saws. He was therefore guilty of contributory negligence in attempting to do so without stopping the gin and assumed the risks of doing so. *Ward Furniture Mfg. Co.* v. *Wiegand,* 173 Ark. 762, 293 S. W. 1002.