The appellant, Alexander Huff, (who will hereinafter be referred to as the plaintiff,) started suit in the circuit court of St. Clair county against the Illinois Central Railroad Company, (herein referred to as the defendant,) in which he sought damages for personal injury, basing his right to a recovery on certain alleged acts of negligence under the Federal Employers' Liability act. The action was in case and the declaration consisted of two counts. The first count alleged the injury to have been caused by a negligent failure on the part of the defendant to furnish sufficient help to do the work then being performed. The work was the removal of a draw-bar. The negligence alleged in the second count was that the defendant furnished *Page 97 
the plaintiff with a defective, worn and broken jack for the purpose of lifting the draw-bar, and that the defective condition was known to the defendant or could have been known to it by the exercise of reasonable care. Trial was had upon a plea of the general issue and resulted in a verdict of $8000 for the plaintiff. On motion for a new trial the trial court required a remittitur of $3000, overruled the motions for a new trial and in arrest of judgment, and entered judgment against the defendant for $5000. The defendant took the case to the Appellate Court for the Fourth District, where a final judgment was entered reversing the judgment of the circuit court without remandment. The cause is here for further consideration on leave to appeal granted by this court.
To sustain the issues as to negligence the plaintiff offered only his own testimony. He testified that for about twelve years prior to April 12, 1933, he had worked continuously for the Illinois Central Railroad Company. He was a car repairer, and on the morning of the date mentioned was told by Steger, his foreman, to replace the draw-bars on a certain box-car; that he said to the foreman, "Mr. Steger, there are two draw-bars on this car to come out; will you give me somebody to take them out?" that Steger said, "You get them out; that car goes out at 2:30. If you can't get them out, I will get somebody who can. It has to go at 2:30;" and that he then proceeded to go to work on one of the draw-bars. The witness explained the manner in which a draw-bar fits into a car between two center sills and how it is held in place by tie-straps. He testified that in taking a draw-bar down it is necessary to first cut the nuts off the bolts or cut the tie-straps off with an acetylene torch; that a draw-bar weighs from 350 to 400 pounds, and that a jack has to be used to sustain the weight while it is being removed. He said that on the morning of the alleged accident he was using a fifteen-ton jack that he got from the jack house; that the jack is about *Page 98 
two feet high when the plunger is down and operates by a lever with a handle on it, and that the up-and-down motion of the jack is controlled by triggers actuated by springs. The witness testified that he had nothing to do with keeping the jacks in repair; that there was either a custom or an order at the yard in question by which it was required that a yellow chalk-mark be placed on any jack found to be defective, and that there was no such mark on the jack he was using that morning. It was his testimony that he put the jack under the draw-bar, raised it up and removed its fastenings; that after he had cut the bolts he found that the coupler was jammed or hung in by some broken spring, or for some other reason it would not come down readily; that he partly released the jack to find out whether or not the coupler was coming-on down; that he shook the coupler to let it loose and released the trigger on the jack once and it came down a notch, the coupler coming with it; that he then put his foot on the jack to release it another notch, whereupon the jack came down but the coupler did not, and that he then shook the coupler to lower it. In his own words, on cross-examination: "I had the trigger off and held the jack lever with my foot. When I shook the coupler it came loose and the jack fell into the casing. The coupler dropped with it at the time." It was his further testimony that the strain thus caused him brought about the physical condition of which he complained. Except for the testimony of one physician the plaintiff offered no further evidence.
The court overruled a motion for a directed verdict for the defendant, and the defendant thereupon introduced substantial evidence tending to show that the plaintiff made no report or complaint of the accident at the time in question but did seek hospitalization on account of a hernia incurred some two years previously. This evidence need not be reviewed, however, since upon this hearing we are concerned only with the evidence most favorable to the plaintiff *Page 99 
and for the purposes of this review are assuming it to be true. (Libby, McNeill Libby v. Cook, 222 Ill. 206; Pollard v.Broadway Central Hotel Corp. 353 id. 312.) Under the authorities we are limited to a determination of the one point of whether or not the plaintiff's evidence taken as true, with all intendments therefrom most favorable to him, is sufficient to establish the negligence charged by him in either count of his declaration.
Any action which seeks to impose liability upon a common carrier under the provisions of the Federal Employers' Liability act must be founded upon negligence. (Barnes' Fed. Code, sec. 8069.) The company is not a guarantor of the safety of the place of work or of the machinery and appliances used. The extent of its duty is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen. (Roberts' Injuries to Interstate Employees, sec. 12; Seaboard Air Line Railway Co. v.Horton, 233 U.S. 492.) In order to recover the plaintiff must prove the existence of the defect complained of, that it was a defect of such a character as to cause its existence to be a negligent failure on the part of the defendant, and that the defect was the proximate cause of the injury. (Seaboard AirLine Railway Co. v. Horton, supra.) In applying the Federal Employers' Liability act this court is bound by the decisions of the Supreme Court of the United States. (Brant v.Chicago and Alton Railroad Co. 294 Ill. 606; Central VermontRailway Co. v. White, 238 U.S. 507.) In occupations involving no extraordinary hazard, in which an employee engages voluntarily, without compulsion or emergency, he is conclusively presumed to have assumed such risks as are ordinarily incidental thereto, not due to the employer's negligence or violation of law. Chicago, Rock Island andPacific Railway Co. v. Ward, 252 U.S. 18; Chicago andNorthwestern Railway Co. v. Bauer, 241 id. 470. *Page 100 
As to the first count of the plaintiff's declaration, wherein he charged the defendant with a negligent failure to furnish sufficient help to do the work being performed, it is apparent that his testimony not only fails to sustain the charge but definitely refutes it. He testified that he asked his foreman for additional help to remove the draw-bar and that his request was flatly refused, and he was informed that if he could not do the work the foreman would get someone who could. No element of negligence was involved in this transaction. Nor is there any contention that the employer violated any rule of law or any duty which it owed the plaintiff in determining that the removal of the draw-bar was a one-man job. The plaintiff was not acting under compulsion or in any emergency, nor was he influenced by any promise of additional help. Under these circumstances he is conclusively presumed to have assumed such risks as were ordinarily incidental to his work, as pointed out in the cases above cited.
Under the second count of the plaintiff's declaration it was incumbent on him to sustain the burden of two distinct lines of proof. First, it was necessary for him to prove that the jack with which he was furnished was defective as alleged; and second, to prove that the defendant knew, or in the exercise of reasonable care should have known, of the existence of such defect. Referring again to the plaintiff's testimony and accepting it as true, we find that the jack worked all right when going up and that it worked all right for a notch or two coming down. From this point on the matter is entirely one of conjecture. Whether the jack failed because of some worn or defective condition, or whether it failed because the plaintiff, as he testified, had the trigger off and held the jack lever with his foot, or whether it fell because of the breaking of some internal part or mechanism, are all matters of conjecture. There is no evidence as to what an inspection of the jack might have disclosed, nor as to whether or not it would *Page 101 
have disclosed anything. So far as this record shows, the jack may have fallen by reason of some latent defect which could not have been discovered by any kind of inspection. The Supreme Court of the United States, in Patton v. Texas and PacificRailway Co. 179 U.S. 658, pointed out that "while the employer is bound to provide a safe place and safe machinery in which and with which the employee is to work, and while this is a positive duty resting upon him and one which he may not avoid by turning it over to some employee, it is also true that there is no guaranty by the employer that the place and machinery will be absolutely safe." The mere happening of the accident raises no presumption that it was caused by negligence. (SpringValley Coal Co. v. Buzis, 213 Ill. 341; Diamond Glue Co. v.Wietzychowski, 227 id. 338; Patton v. Texas and Pacific RailwayCo. supra.) In the case last cited it was pointed out that where the testimony leaves the matter uncertain and shows that anyone of a half dozen things may have brought about the injury, it is not for the jury to guess between those half-dozen causes and find that the negligence of the employer was the real cause when there is no satisfactory foundation in the evidence for that conclusion. The court said: "If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."
We are of the opinion that the Appellate Court arrived at a correct judgment. The record before us presents no question of fact for the consideration of a jury and no evidence to be weighed, but only a failure of proof as to both counts of the plaintiff's declaration, which required a directed verdict for the defendant in the trial court.
The judgment of the Appellate Court will therefore be affirmed.
Judgment affirmed. *Page 102