Clarence Haas, Plaintiff-Appellant, v. Buick Motor Division of General Motors Corporation, a Corporation Doing Business in the State of Illinois, Defendant-Appellee.

Gen. No. 11,182.

Second District, Second Division.
February 18, 1959.
Released for publication March 7, 1959.

Roger V. Pierson, of Princeton, for appellant.

David H. McNeilly, of Peru (Kevin D. Kelly, of counsel) for appellee.

JUSTICE CROW delivered the opinion of the court.
This is a suit upon a written express warranty brought by the plaintiff, Clarence Haas, against the defendant, Buick Motor Division of the General Motors Corporation. At the close of the plaintiff's evidence the trial court directed a verdict for the defendant and judgment was entered accordingly. The plaintiff filed a post-trial motion for judgment notwithstanding the verdict, or in the alternative in arrest of judgment, or in the alternative, for a new trial,

which motion was denied. This appeal by the plaintiff followed.

 The plaintiff cites three alleged errors relied upon as grounds for reversal. However, only one—that the trial court erred in granting the motion for directed verdict—is sought to be supported by points and authorities and is argued in the brief. As to the other two, relating to the court's not allowing a motion for amendment of the complaint, and to the court's not allowing the post-trial motion, where the brief contains no citation of authorities and no argument in support of the alleged error, that alleged error may be considered waived: Rule 7, Appellate Court Rules, Ch. 110, Ill. Rev. Stats. 1957, Par. 201.7. The only matters referred to in the post-trial motion, in any event, are the allowance of the motion for directed verdict and the not allowing of the motion for amendment of the complaint.

The plaintiff's complaint sets forth, in substance, an alleged cause of action for a breach of a written warranty on the part of the defendant—a failure to comply with the terms thereof, and the alleged resulting damages to the plaintiff. It appears that in May, 1956 the plaintiff purchased a new Buick automobile from an authorized Buick dealer. At the time of the purchase there was delivered with it, as part of the purchase contract, a booklet containing an express written warranty, the pertinent provisions of which are:

"It is expressly agreed that there are no warranties, expressed or implied, made by either the Dealer or the Manufacturer on the Buick motor vehicle, chassis or parts furnished hereunder, except the Manufacturer's warranty against defective materials or workmanship as follows:

'The Manufacturer warrants each new motor vehicle, including all equipment or accessories (except tires) supplied by the Manufacturer, chassis or part manu-

450

factured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, express or implied, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles.

'This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an Authorized Buick Service Station in any way so as in the judgment of the Manufacturer to affect its stability and reliability, nor which has been subject to misuse, negligence or accident.' "

The plaintiff took delivery of the automobile and both he and his wife drove it. Later, after it had been driven a little over 500 miles, the automobile was given the usual 500 mile service inspection check by the Buick dealer from whom it was bought, and a minor adjustment was made to the accelerator pedal linkage. That was the only adjustment made. There is no argument by the defendant that the automobile was serviced elsewhere than at an authorized Buick garage.

In June, 1956, after the automobile had been driven slightly over 1300 miles, the wife of the plaintiff was driving it on a public highway. She noticed smoke coming from beneath the dashboard, pulled to the side of the road and stopped, and tried to turn off the ignition, but the key would not turn. She then left for assistance.

The plaintiff was notified, and when he arrived he found the dashboard melted and the windows smoked

451

up, although the fire, if any, had been extinguished by someone before he arrived. The plaintiff called his insurance representative who came to the scene. The latter then called the Buick dealer's garage. The automobile was towed to the Buick dealer's garage, where it was stored for nine days, during which time "nothing was done," according to the plaintiff, and thereafter it was sold as salvage by or on behalf of the plaintiff or his insurance company.

While the car was at the Buick dealer's garage, the plaintiff saw it the day after the incident, and his insurance agent saw the car two or three days later. The Buick dealer testified he saw the automobile at the time of the 500 mile inspection, and after the fire when the car was towed to his garage. While the car was there he said the district manager of Buick Motor Division saw it in the garage.

Taking the evidence as a whole, in its most favorable light for the plaintiff, it appears undisputed that there was a written express warranty against defective parts; that no one other than the authorized Buick dealer had serviced the car; that on the occasion concerned smoke came from beneath the dashboard, the ignition would not turn off, the dashboard melted, the windows smoked up, and the car was damaged by fire during the warranty period; that the car had been used in a normal way; that the damaged automobile was towed to the Buick dealer's garage; and that a representative of the defendant saw the automobile in its damaged condition at the garage.

The plaintiff contends that the damage to the automobile being had under the circumstances above described it was incumbent upon the defendant to make an inspection and examination to determine whether or not there was a defect in the material and workmanship and that this was not done.

The defendant urges, on the other hand, that in a suit for damages for breach of a written express war-

452

ranty, the burden of proof was on the plaintiff to show by a preponderance of the evidence the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty.

■■ Where a motion is made at the close of the plaintiff's case to direct a verdict for the defendant, if there is no evidence, or but a scintilla of evidence, tending to prove the material allegations of the complaint, the motion should be allowed and a verdict directed, but if there is any evidence, with its reasonable inferences and intendments, viewed most strongly in the plaintiff's favor, which fairly tends to prove the material allegations of the complaint, the motion must be denied: Libby, McNeill & Libby v. Cook (1906) 222 Ill. 206. Where, in such a situation, uncertainty arises as to the inferences that may legitimately be drawn from the evidence so that fair-minded men may honestly and reasonably draw different conclusions, the question is not one of law but one of fact, to be settled by the jury: Denny v. Goldblatt Brothers, Inc. (1939) 298 Ill. App. 325; Chicago & N. W. R. Co. v. Hansen (1897) 166 Ill. 623; Plodzien v. Secool et al. (1942) 314 Ill. App. 40.

■ By its terms this warranty negatives and excludes any implied warranty between either the manufacturer or the dealer and the buyer. This action is therefore limited to the written warranty. By its terms it is a "Manufacturer's warranty against defective materials or workmanship." The manufacturer warrants, so far as material, "each new motor vehicle, including all equipment or accessories . . . supplied by the manufacturer, chassis or part manufactured by it to be free from defects in material and workmanship . . ." And the defendant's obligation there-

453

under is "limited to making good at its factory any part or parts thereof which shall . . . be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective." The burden of proof, therefore, so far as material, was on the plaintiff to show,— and at the conclusion of his case to have by then made a sufficient prima facie showing,—that there were *"defective materials or workmanship,"* within the scope of the warranty, that there were *"defects in material and workmanship"* in the vehicle or its equipment or accessories supplied by the manufacturer or in the chassis or some part manufactured by it, that a part or parts had been *"returned to it with transportation charges prepaid,"* which its examination disclosed to its satisfaction to have been thus defective, and that it had not made *"good at its factory such part or parts."* We do not, in this case, reach the question of the meaning, interpretation, and applicability of the phraseology "which its examination shall disclose to its satisfaction to have been thus defective," and express no opinion as to that feature.

■ The mere fact that an occurrence resulting in damage to property has happened does not authorize any presumption or inference that the defendant was at fault: Rotche v. Buick Motor Co. (1934) 358 Ill. 507; Huff v. Illinois Cent. R. Co. (1935) 362 Ill. 95. The mere fact that a fire evidently occurred here, resulting in damage to the property, does not authorize any presumption or inference that the defendant was responsible therefor,—the burden was on the plaintiff to prove, among other things, that there was some material defect in materials or workmanship: Lindroth v. Walgreen Co. et al. (1950) 407 Ill. 121. This is not a case for the application of some doctrine analogous to that of res ipsa loquitur: Lindroth v. Walgreen Co. et al. (1946) 329 Ill. App. 105; 28 Ill. L. and P. p. 180–195.

The pleadings and record are entirely silent as to what part, if any, failed or was defective in material or workmanship. The record does not show what part or parts were damaged except that the dashboard was melted, the key would not turn in the ignition, and the windows were smoked.

The plaintiff argues, in substance, that it was incumbent upon the defendant affirmatively in the first instance to make an inspection and examination to determine whether or not there were any defective parts,—that "the next step was upon the defendant to go forward with its inspection." Certainly by the terms of the warranty the defendant was not so obligated. Nor does the plaintiff cite any authority to support this contention. The record is silent as to any demand or request by the plaintiff to the defendant to determine the cause of the fire, to ascertain the presence of any defective parts, if any, or to replace such defective parts, if any. Nor does the record show that the car was taken elsewhere, examined by some other competent mechanic, and testimony then adduced from such other competent mechanic as to parts claimed to be defective in material or workmanship. As a matter of fact there was no evidence as to any defective part, materials, or workmanship in the vehicle, equipment or accessories supplied by the manufacturer, chassis or part manufactured by it.

The plaintiff saw the car only once in the garage, and he apparently did not say a single word to anyone about parts, repairs, inspections, examination, or warranties. The insurance agent of the plaintiff inquired of the local representative of the defendant about replacement parts "because the car was still under warranty." The local representative did not comment thereon but referred the insurance agent to the district representative for the defendant. The insurance agent testified he called the district representative by telephone, but the record is silent as to what,

if any, conversation there was between them. Neither the district manager or the local representative of the defendant were asked to do anything about the car by the plaintiff or his insurance agent, so far as the record shows. The local Buick dealer testified that no one asked him to do anything about repairs, replacements, inspections, or examinations, that he had no authorization to ship the car back or replace it, no one tendered any parts to him or asked him to ship any parts back to Buick Motor, and he never requested Buick Motor to repair or replace any parts.

■ There is simply no evidence in the record to sustain the alleged breach of the written express warranty, and the warranty itself excludes any other written or oral, express or implied, warranties. After a careful consideration of the questions involved we have reached the conclusion that the plaintiff failed to make out a prima facie case against the defendant for breach of warranty, and the trial court, accordingly, correctly directed a verdict for the defendant at the close of the plaintiff's case.

The judgment is affirmed.

Affirmed.

WRIGHT, P. J. and SOLFISBURG, J., concur.