FORD MOTOR CO. *v.* FISH.

5-2141                                          335 S. W. 2d 713

Opinion delivered May 30, 1960.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Talbot Feild, Jr., O. Wendell Hall, Jr., Mehaffy, Smith & Williams, Robert V. Light,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a judgment for $12,000 entered by the Saline Circuit Court in favor of appellee against appellant. The jury found Ford Motor Company guilty of negligence in the manufacture of a certain Ford truck, subsequently purchased and driven by appellee, and that such negligence was the cause of injuries sustained by Fish.

About April 12, 1956, Fish, employed by the State Game and Fish Commission as a game refuge commissioner in Lafayette County, purchased the Ford pickup truck from the Ford dealer in Stamps, L. D. Galloway, Jr. Five days later, while traveling highway 67 out of Little Rock, going toward Benton, the truck left the right side of the highway, turned over twice, and Fish was injured. This occurred shortly after 2 p.m., and the testimony establishes that the truck had been driven a total of approximately 550 miles at the time of the occurrence.

On January 9, 1958, Fish instituted suit in the Saline Circuit Court against the Ford Motor Company and Milton Green,[1] d/b/a Stamps Auto Company, alleging the purchase of the Ford pickup truck from Stamps Auto Company. Appellee averred that he drove the truck for five days in a careful manner, and had allowed no one else to drive the vehicle; that it had been driven 550 miles; that he had not in any way tampered with, altered, or disturbed, the braking assembly or mechanism, nor allowed any other person to do so; that such mechanical parts and assemblies were sealed, and locked by the Ford Motor Company in the process of manufacture, by means of screws, bolts, rivets, and pins, and "were at the time of the injury to plaintiff hereinafter described in the same condition, position and alignment as they were when this vehicle left defendant Ford Motor Company's factory except for whatever changes, if any, to condition, position and alignment as may have been caused by approximately 550 miles of careful operation of the vehicle." Paragraph four alleged "that on April 17, 1956, plaintiff was driving this vehicle at a speed of approximately 45 miles per hour on U. S. Highway 67-70 in Saline County, Arkansas, at which point said highway is a smooth, level, unobstructed concrete public roadway, when the right front wheel of the truck suddenly 'grabbed' twice in rapid succession and immediately thereafter that wheel 'locked' causing the vehicle to

[1] Subsequently, service of summons upon Green was quashed, and the complaint amended naming L. D. Galloway as the defendant owner of Stamps Auto Company rather than Green.

overturn, and causing the injuries and damages to plaintiff hereinafter described." The c o m p l a i n t **further** charged, insofar as Ford Motor Company was concerned, that the company negligently failed to exercise the degree of care owed by a manufacturer of a vehicle to the vendee and public "in the manufacture, testing, inspection, design and engineering of its product" and as a result of this failure, placed this vehicle in the channels of trade for sale with mechanical defects which caused, or contributed to cause, the injuries and damages to plaintiff. Further allegations were that the defective parts "were closed up, sealed and locked by defendant Ford Motor Company by means of screws, bolts, rivets and pins and thus continued to be in the exclusive control of this defendant until the time of the injuries to the plaintiff, and therefore their nature is within the exclusive knowledge of this defendant. All of the foregoing defects would have been discoverable by this defendant in the exercise of reasonable inspection and testing." The complaint sought damages in the amount of $64,844.10. After the filing of various motions and interrogatories, both the Ford Motor Company and L. D. Galloway filed separate answers, denying liability and asserting that if appellee sustained any injuries or damages, such injuries or damages were proximately caused or contributed to by negligence or carelessness on the part of appellee. The case was heard on October 15, 1959, at which time the jury found the defendant, L. D. Galloway, d/b/a Stamps Auto Company, guilty of no negligence, found Charlie Fish guilty of no negligence, but found the Ford Motor Company guilty of the entire and total negligence, or 100%. Verdict was returned in the amount of $12,000.[2]

For reversal, appellant urges three points, as follows:

"I.

The evidence was insufficient to sustain a verdict against appellant, and the trial court should have directed a verdict in appellant's favor.

---

[2] The excessiveness of the verdict is not questioned.

## II.

The Court erred in admitting, over the objection of appellant, certain incompetent testimony offered on behalf of appellee.

## III.

The Court erred in giving, over the general and specific objections of appellant, plaintiff's instructions numbered 1, 4, 5, and 6.''

We proceed to a discussion of these contentions, though not under separate headings.

The evidence reflected that appellee had been in possession of the truck five days, and had driven it 551 miles. Fish testified that no one else had driven the truck, and that he had not inspected or tampered with the mechanical parts in any way. Appellee is a game refuge keeper in Lafayette County, and on April 17th, he drove the vehicle to Little Rock for the purpose of having a two-way radio installed, leaving Bradley (a distance of 163 miles from Little Rock) about 1 or 1:30 a.m., and arriving in Little Rock between 6 and 6:30 a.m. Installation of the radio was completed around 12:30, and appellee started back to Bradley, taking highway 67 out of Little Rock. He passed a heavily loaded truck, while traveling at a speed of 40 or 45 miles per hour, and after getting back on his own side of the highway, noticed that his right front wheel was pulling to the right. "It grabbed two or three little short grabs, and then it grabbed and held, and pulled me to the right." The car left the highway and turned over twice; the right door came open, and appellee, in sliding down, had both legs pinned to the ground by the running board. The radio was on, and Fish called the Game and Fish office, and asked that help be sent. According to the witness, no traffic was approaching at the time the mishap occurred. In the meantime, William Rider, a state policeman, arrived, and with the help of bystanders, removed Fish from the wreckage.[3] Appellee testi-

---

[3] Rider testified that Fish told him that the reason he (Fish) did not pull to the left, was because of oncoming traffic.

fied that, while being carried away, he observed two or three short, black marks, three or four feet in length, some thirty or forty feet back of where the truck left the highway. Appellee's contention is that these marks were left by the right front wheel, and show that the wheel did lock. Both Aubrey Fowler, Chief Enforcement Officer for the Game & Fish Commission, and Rider testified that they observed the skid mark, though they testified that it was a single (rather than two or three short marks), black, straight, mark, that ran straight for a few feet, and then veered, at first gradually, and then sharply, to the right. Fowler stated that he drove the truck back to the Game & Fish Commission Building in Little Rock, a distance of approximately 15 miles, at a speed of 12 to 15 miles per hour. He observed nothing wrong with the operation of the vehicle, though he testified that he did not apply the brakes at all before stopping at the Game & Fish Building.

In endeavoring to establish liability on the part of the Ford Motor Company, appellee relied, to some extent, on the doctrine of res ipsa loquitur. This Latin phrase is generally interpreted to mean "the thing itself speaks" or "the transaction speaks for itself", and is a concise way of stating that circumstances attending an accident are of themselves of such character as to justify an inference of negligence on the part of one having control over such circumstances. Interesting discussions of this doctrine are found in various legal volumes, and it is evident that all jurisdictions are not in accord in determining what fact situations properly come under the doctrine. However, in those states which recognize the doctrine, certain conditions are necessary before res ipsa loquitur may be applied. As stated in Corpus Juris Secundum, Vol. 65, para. 220 (4), page 999:

"There are several conditions, aside from those directly pertaining to the nature and happening of the accident or injury as such, which are generally recognized as essential to make the doctrine of res ipsa loquitur applicable to a given case and to lay the foundation for the presumption or inference arising therefrom. These

conditions or essential elements include superior knowledge on the part of defendant as to the cause of the accident, * * * the absence or unavailability of direct evidence of negligence, * * * the existence of a sufficient duty on the part of defendant to use due care, * * * and proof of the accident or injury and defendant's relation thereto.

In order that the doctrine of *res ipsa loquitur* may apply, plaintiff must first present sufficient proof of the existence of the elements necessary to bring the doctrine into operation; the inference arising from the rule does not supply the foundation facts from which the rule arises, and the application of the doctrine to a particular state of facts cannot be based on speculation alone.''

In paragraph 220 (6):

"Although, * * * the doctrine of *res ipsa loquitur* provides a substitute for direct proof of negligence, the rule is nevertheless one of necessity to be invoked only when, under the circumstances involved, direct evidence is absent and not readily available.''

In *Words and Phrases,* Vol. 37, page 484:

"For application of doctrine of *'res ipsa loquitur'* accident must be of a kind which ordinarily does not occur in the absence of some one's negligence, it must be caused by an agency or instrumentality within defendant's exclusive control, and it must not have been due to any voluntary action or contribution on part of plaintiff.''

Further, on page 488, paragraph 5:

"The mere happening of accident does not justify recourse to *'res ipsa loquitur'* rule in personal injury suit, but accident must further appear to be without explanation in light of ordinary experience, except on theory of defendant's negligence to render rule applicable.''
Still further, paragraph 12:

"The *'res ipsa loquitur'* doctrine applies only when the damage caused, which is the basis of the action, is of such a nature that it can be said that according to com-

mon experience the event which caused the damage would not have occurred without some fault on the part of the persons sought to be held responsible.''

Finally, in 7A *Blashfield, Automobile Law and Practice,* 217, Sec. 4818, it is stated:

''The mere occurrence of an accident resulting in injuries to the buyer of an automobile or other third person does not raise a presumption that the manufacturer or dealer was negligent, or that the vehicle had a latent defect, and plaintiff must prove that the alleged manufacturer was such, and he has the burden of proving that the manufacturer was negligent in the manufacture of the automobile. * * *

However, the doctrine of *res ipsa loquitur* may be applied in a proper case, as, for example, in the case of an explosion of a solvent used for the tune-up of automobile motors.''

Through the testimony of Artie Bearden, an automobile mechanic of Benton, and W. C. ''Dutch'' Mayer, a garage operator in Little Rock, appellee sought to prove that the right brake was defective. Mayer testified, ''The brake was binding'', and he took it to Cook's Machine Shop to see ''if the drum was out of round''. He stated that the drum was placed on a machine which could be used for determining whether the drum was out of round. Mayer testified that ''it was an eighth of an inch off''. The witness stated that, based on his experience as an automobile mechanic, if a drum is an eighth of an inch out of round and the brakes are applied, or if the brakes are set too tight, the vehicle will be thrown to one side. He testified this would not happen every time, but that if the drum is out of round and it happens to revolve at the proper point, it would cause it to ''lock up''. Mayer further stated that a brake could also be caused to lock by brake fluid or grease on the brake lining, or that it could be caused by a rough lining. However, on cross examination, the witness testified that if a drum is as much as an eighth of an inch out of round, the driver of the vehicle would feel this defect by pres-

sure on the brake pedal; that the pedal would work backward and forward, and the driver could easily tell that something was wrong; also, if the car had been driven for 550 miles, a "hot spot" would be created at the high point, and that this "hot spot" would be visible by looking at the brake drum; however, his examination revealed no "hot spot" on this particular drum. Mayer found no foreign matter of any nature on the brake lining, and in fact, found nothing wrong with either the brake shoes or the brake lining except "that the lining was scored a little bit". Mr. Mayer testified that the brake linings "shouldn't score within four to five thousand miles".

Counsel for appellee propounded to the witness Bearden the following hypothetical question:

"Assume that a buyer purchased a new 1956 model Ford pick-up truck and drove it for four days and on the fifth day, at a time when he had about 550 miles on that pick-up truck, and at a time when no other driver but him had driven it since he bought it, and at a time when he had not tampered with any of the mechanical parts of that vehicle, nor had permitted anyone to, and at a time when he had had no mechanical difficulty with the pick-up truck, that he was driving down a straight, level, concrete highway, under favorable weather conditions, it was a pretty day, the pavement was dry, and, as he would describe it in his layman's language, the right front brake grabbed one, two or three times in rapid succession, and releasing each time, and then it grabbed and locked, resulting in the vehicle making a single black skid mark on the pavement for a short distance in a straight line, then veering off gradually to the right shoulder, then more sharply to the right across the shoulder and off the highway, resulting in the vehicle turning over, I believe, twice; now, assuming that state of facts, do you have an opinion as to what might have caused that reaction? . . . Assume one further fact — that during this four days that the vehicle had been driven, that it had been driven on some paved roads, some gravel roads, some dirt roads; and, assume one fur-

ther fact — that the driver of that vehicle had arisen on the morning of the incident so as to leave his home at approximately 1:30 in the morning, and consequently had been up all morning and the incident occurred approximately 2:00 o'clock in the afternoon, and he had not slept during that period of time and had had approximately 5 hours of sleep the night before; now, then, do you have an opinion, under those circumstances, as to what might have caused this incident?''

To this question, objected to by appellant, the witness replied that he had an opinion, the opinion being ''it could be caused by foreign matter in the wheel or a bearing''. Bearden explained that by foreign matter, he meant something that was not supposed to be there, i.e., in this instance, grease or brake fluid on the brake lining. One addition was then made to the hypothetical set of facts, and the witness was asked, ''Assume that some application was made on the brake pedal, would there be any change or do you have an opinion as to what might happen in this instance?'' To this question, Mr. Bearden replied, ''It would lock the wheel.'' Appellant continued with his objections to the question and answer.

Appellant offered the testimony of Robert Riding, an engineer and employee of Ford Motor Company for 19 years. Riding testified that a drum cannot be tested properly in the manner testified to by Mayer, and that the use of the spindle is not an accurate way to test a drum for ''out of round''.[4] The witness stated that the ''run out'' on the drum was measured at seven thousandths; and that the manufacturer's permissible tolerance is five thousandths; that a run out of up to five thousandths is considered perfect; however, he testified that a run out of seven thousandths would not be noticed in the operation of the drum. The witness testified that if a drum were one-eighth of an inch out of round, one could not get a brake adjustment, and the pedal would bounce up and down; further, that under such a condition, the brake would not have lasted 500 miles; that a

---

[4] ''Out of round'' means when the center point is not where it should be, and ''run out'' means a wobbling of the drum.

"hot spot" would have been evident, and he found no evidence that heat had ever been applied to the drum, nor did he notice any unusual scoring or wear on the linings. Of course, we are not here concerned with the conflict in evidence, for conflicts are resolved by juries. We are only concerned with whether the court committed error in permitting the case to go to jury on the theory advanced.

We have reached the conclusion that, under the evidence offered, the doctrine of *res ipsa loquitur* was inapplicable. Appellees rely heavily upon *Coca-Cola Bottling Co. of Ft. Smith* v. *Hicks,* 215 Ark. 803, 223 S. W. 2d 762 (1949) and *Coca-Cola Bottling Co. of Helena* v. *Mattice,* 219 Ark. 428, 243 S. W. 2d 15 (1951). Both of those cases involved the explosion of a bottle of coca-cola, and we held that the mere fact that a bottle explodes raises a presumption of negligence in bottling, since reasonable men know that when bottles are properly manufactured and filled, they do not blow up. Appellee considers these cases analogous to the one before us, for he argues that the evidence reflects that appellant had exclusive control over the brake assembly up until the time of the accident. It is at once apparent that there is a vast difference between the handling of a coca-cola bottle and the driving of an automobile. There is much room for mishandling in operating a car; in fact, we think it can be safely said that automobiles ordinarily depart the road through negligence of the operator, rather than through negligence of the manufacturer. There is still another clear distinction. After the bottle explodes, there is little that can be done by the injured person to determine the cause of the explosion. The bottle cannot be reassembled, and checked for defects. The cited cases would be more similar if the motor of a car exploded, or a wheel suddenly disintegrated. In such event, a determination of the exact cause would be extremely difficult; however, brakes are not a complicated mechanism. The average auto repairman can determine the exact nature of the malfunction of brakes, — and all parts of the brake mechanism were available for inspection. In *General Motors Corporation* v. *John-*

*son*, 137 F. 2d 320 (1943) and *Hupp Motor Car Corporation* v. *Wadsworth*, 113 F. 2d 827 (1940), cited by appellee, direct proof of negligence in the manufacturer of automobiles was found, and the doctrine of *res ipsa loquitur* was not relied upon. A case which seems to be somewhat similar to the case at bar is *Haas* v. *Buick Motor Division of General Motors Corporation*, 20 Ill. App. 2d 448, 156 N. E. 2d 263. There, a new automobile had been driven about 1,300 miles when smoke began coming from under the dashboard. When an attempt was made to turn off the ignition, the key would not turn. The fire melted the dashboard, and windows were smoked. A verdict was directed for the manufacturer, and this action was sustained by the Appellate Court of Illinois (Second District, Second Division). Although the suit was brought on express warranties, we feel that the logic is applicable to the present case. The Court said, *inter alia*:

‘‘The mere fact that an occurrence resulting in damage to property has happened does not authorize any presumption or inference that the defendant was at fault. *Rotche* v. *Buick Motor Co.*, 1934, 358 Ill. 507, 193 N. E. 529, *Huff* v. *Illinois C. R. R. Co.*, 1935, 362 Ill. 95, 199 N. E. 116. The mere fact that a fire evidently occurred here, resulting in damage to the property, does not authorize any presumption or inference that the defendant was responsible therefor — the burden was on the plaintiff to prove, among other things, that there was some material defect in materials or workmanship. * * * This is not a case for the application of some doctrine analogous to that of *res ipsa loquitur*.’’

In line with the definitions and authorities herein cited, we conclude that the facts do not make a proper case for the application of *res ipsa loquitur*. There was evidence that the car left the highway without fault of the driver. There was evidence that the brake mechanism was sealed and locked by the motor company, thus in their exclusive control, and that this mechanism had not been disturbed. Of course, it cannot be said that the accident (leaving the highway) was without explanation in the light of ordinary experience; however, be that as

it may, the alleged defective mechanism was not destroyed, was available to the injured party for inspection and examination, was examined, and the testimony reflected that specific defects were found.

Appellant complains that appellee was permitted to testify that the right front wheel of his truck caused the marks on the highway. Appellant states that this was an unsupported conclusion or opinion, and violates the rules of evidence which exclude conclusions or opinions of all witnesses except experts. We do not agree. This was not a matter of a witness coming to the scene after the occurrence was over, viewing the skid mark and then testifying that it was caused by the right front wheel. Appellee's testimony was based on the "feel" of the drag in the front wheel, through steering, as the car went to the right.

We think the court committed error in permitting the answer of the witness Bearden, in response to the hypothetical question, to be considered by the jury. Mr. Bearden's testimony amounted to a suggestion that there was the possibility that grease or brake fluid within the braking assembly could have caused the accident. Yet, all witnesses were unanimous in stating that no such foreign matter was found within the assembly. The jury was told by the court that the witness had given his opinion as an expert "as to what might have happened, and the jury will consider it in that manner." Since there was absolutely no evidence upon which to base this possibility, the answer should not have been considered, as it afforded the opportunity for speculation on the part of the jury.

We are also of the opinion that the court erred in giving Plaintiff's Instructions 4 and 5. Without going into detail, it suffices to say that these instructions, in effect, permitted the jury to apply the doctrine of *res ipsa loquitur,* which we have held inapplicable under the facts developed at the trial. Objections to other instructions are held without merit.

There was evidence of specific negligence, though not of the strongest nature. For instance, the witness

Mayer testified that the brake was binding, which occasioned his taking it to Cook's Machine Shop to see if the drum was out of round; there was the evidence of the skid mark, the evidence of Fish himself as to the pull to the right; the testimony that the mechanism had not been disturbed and had remained sealed, and that the drum was an eighth of an inch out of round.

In accordance with the reasons set forth in this Opinion, the judgment is reversed, and the cause remanded.

McFADDIN, J., dissents in part.

ED. F. McFADDIN, Associate Justice, dissenting in part. My dissent is because I am of the opinion that the rule of *res ipsa loquitur* applies in this case. As I see matters, the majority opinion means that we now have one rule for the use of *res ipsa loquitur* as regards bottled drinks, and another rule for the use of *res ipsa loquitur* as regards automobiles. This seems entirely irregular as far as I am concerned. The rule of *res ipsa loquitur* should apply uniformly.