**Martha Gunn, Appellant, v. Klean-Rite Cleaners, Inc., a Corporation, Appellee, and Borg Warner Corporation, a Corporation, Appellee.**

**Gen. No. 67–36.**

Third District.

May 3, 1968.

Cunningham, Greenberg & Janssen, of Peoria, for appellant.

Heyl, Royster, Voelker & Allen, and Smith, Whitney & Church, of Peoria, for appellees.

SCHEINEMAN, J.

Martha Gunn filed this suit claiming damages for personal injuries she incurred while using a washing machine in a "Laundromat" owned and operated by the defendant, Klean-Rite, Inc. She alleged the machine she used was manufactured by the other defendant, Borg Warner Corporation.

The type of machine involved operates in cycles controlled by a timer. When the starting lever is pushed, the timer causes water to flow into the machine and there follows a ten-minute period of agitation by an oscillator. Then there is a minute pause. Thereafter the wash water is drained out and clean water rinses the clothes for about eight minutes. There follows another one-minute pause, then the agitator goes into a rapid spin to extract the rinse water. When the cycle is complete the machine stops automatically. There is no switch to stop it otherwise. There is a coin slot and the cost of one complete operation is 20¢. There were also three lights on the machine, one for each phase of the cycle.

The plaintiff testified that, on the day of her injury, she had loaded the machine and started it, after putting two dimes in the slot. Then she went outdoors for awhile, it being quite warm inside. Upon returning she observed the machine was not in operation and the lights were out. She read a sign on the wall, repeated on the machine which read: "If lights go out and machine stops during cycle, open door, rebalance load (distribute clothes evenly around agitator) and push down red button at top left side of machine."

After reading the instructions she looked for someone to help her, but there was no employee on duty. She lifted the lid and began to redistribute the clothes as directed when the machine went into its spin phase in reverse, catching her hand and causing injury to her hand, arm and shoulder.

The president of the local company testified the Norge machines were acquired secondhand from a New York company. At the time of this incident they had been in use about four years which is considered their normal useful life. They were in the process of being junked and replaced by another make.

At the time, there were eight new machines in the place and the witness thought from the plaintiff's description of the location where she was injured, that she had been at one of these new machines, not a Norge. The remaining Norge machines were junked in some period of weeks, and none was available for inspection or production at the trial.

The complaint in this case consisted of five counts. The first three were against Borg Warner and the next two against the local company. Count I charged that Borg Warner was negligent in the design and manufacture of the washing machines referring particularly to the lack of adequate guards and safety devices, meaning there was no switch to stop the machine and no automatic cutoff when the cover was open. Also it charged defendant failed to make reasonable inspections and failed to warn plaintiff of the defects and hazards.

Count II was based on warranty, charging defendant had warranted the machines were of merchantable quality and fit for their intended purpose, but they were not. Reference was again made to the lack of safety devices.

Count III was a products, strict liability charge, based on an unreasonably dangerous condition when originally sold by defendant, again speaking of the lack of adequate safety devices.

Count IV charged that Klean-Rite was negligent in failing to maintain the equipment properly and in failing to install safe machines, failure to make reasonable inspections, failure to warn and failure to have any at-

tendant on duty, and allowing the machines to be in a state of disrepair.

Count V was based on warranty. (This summary of the complaint is greatly condensed.)

The jury found in favor of Borg Warner but for plaintiff against Klean-Rite, and fixed her damages at $4,500. The court allowed the Klean-Rite motion for judgment notwithstanding, and denied plaintiff's motion for a new trial as to Borg Warner.

During the trial, at the conference on instructions, the court refused all warranty instructions, also strict liability, and the charge of failure to use ordinary care. Plaintiff contends these rulings require that the judgment in favor of Borg Warner be reversed.

Examination of the refused instructions reveals that they purport to state issues, but in fact they are copies of the lengthy charges made in the complaint. In effect, this would require the judge to read to the jury all the substance of three counts as stated by the plaintiff's counsel. The former custom of attorneys striving to have the judge sound like he was making arguments for a party, resulted in much criticism of our system of instructing juries. The tendered instructions did not comply with the Supreme Court Rule 239 (formerly Rule 25) and lengthy recitals of charges in a complaint have been held reversible error. The leading case is Signa v. Alluri, 351 Ill App 11, 113 NE2d 475.

The Court below gave counsel the opportunity to submit proper instructions, but he elected to stand on those tendered so they were refused. We hold this ruling was justified and was not error. The plaintiff insisted on the slanted instructions and thereby took the risk they would be refused. Walton v. Greenberg, 1 Ill App2d 99, 116 NE2d 197.

An engineer employed by Borg Warner testified his company made two types of washing machines, one with shutoff switches, including one that shut off the current

when the machine was opened. The other type was without any switches. This witness had looked up the serial numbers of the Norge machines involved and found they were originally sold to a laundromat in New York. These were machines without shutoff switches because that is what the New York customer ordered. He further testified that he was familiar with the design of machines in use, and that machines with switches were not used in public laundromats. In these places the machines can be shut off during operation only by unplugging. He also testified there would be a light on the machine during all its phases.

■ We first consider the factual questions presented by the evidence as to Borg Warner. Its engineer testified that his company makes machines with switches, but they were not used in laundromats. Some jurors, considering this testimony in the light of their own observation and experience in life, may well have recognized that these machines are used by persons with varying degrees of experience and aptitude, so that the simplest type of machine is desirable. At any rate, it was within their province to find that a factory may properly produce the type of machines its customers want, and that this is not negligence, nor breach of warranty, nor delivering unreasonably dangerous machines.

Thus, it appears that the verdict for defendant Borg Warner was within the scope of the evidence, and justified a judgment in its favor. That judgment is affirmed.

As to the local company, its president testified about the junking and replacing of these machines. Within some weeks after plaintiff's injuries, all of the Norge machines in this establishment were disposed of. It was not indicated just when the machine that caused plaintiff's injuries was removed, but long before trial all of the Norge machines were gone from this place, so that none was available for inspection or production at the trial.

This witness also testified that inspections and maintenance were kept up. However, the jury had heard the testimony of Borg Warner's engineer that there would be a light visible throughout all phases while plaintiff asserted that all lights were out when she found that the machine had stopped. These were the conditions specified in the sign directing a customer what to do, and caused her to act as she did.

The jury may have regarded this evidence as indicating a lack of proper inspections and maintenance. The erratic action of the machine as described by the plaintiff, necessarily indicates something was wrong and a defect of some kind existed. It would seem reasonable inspections should have disclosed that the machine sometimes went into action when all lights were out.

The argument for this defendant includes citations of a number of cases which we believe are not in point on the facts. We here refer to those most strongly emphasized.

In Huff v. Illinois Cent. R. Co., 362 Ill 95, 199 NE 116, the plaintiff, an employee on a railway repair track, was told to remove a drawbar from a boxcar. He was given no instructions how to do it. He used a heavy-duty jack which he worked up under the drawbar, then removed the parts holding the drawbar and sought to lower it. The jack went down a notch or two but the drawbar stuck. The workman held the jack lever with his foot and shook the drawbar, it came loose and the jack fell into the casing, and he was injured. Upon these facts the court declared itself unable to conjecture what caused this operation and held "the mere happening of the accident raises no presumption that it was caused by negligence."

This rule of law would be applied, but we see no resemblance to the facts in this case. Here there is no need to conjecture: the machine was stopped with the lights out. The woman then followed instructions as to

358

what to do when these conditions arose, thereupon the machine started again without the use of any switch, and injured her arm. It is obvious that the operation was defective, and that this defect should have been discoverable by reasonable inspection. The proprietor had told the customer what to do and should have exercised reasonable care to avoid dangerous results when the instructions were followed. We do not see anything in the Huff case which would hold that a jury could not find negligence under these conditions.

In Miszczak v. Maytag Chicago Co., 11 Ill App2d 496, 138 NE2d 52, a woman using her daughter's washing machine had her hand and arm caught in the rollers that wring the water out of the laundry, when she pushed on the tension release bar, pursuant to instructions, but it failed to work. In its finding that there was no proof of negligence, the court noted that the plaintiff and her daughter were in the sole possession of the machine, and had been for nearly two years. Thus, the maker and seller of the machine were not chargeable with failure to inspect and maintain, and there was no excuse for failure to produce the machine at the trial, or to present testimony as to its defective condition.

Likewise in a cited Florida case, Brookshire v. Florida Bendix Co., Inc. (Fla), 153 So2d 55 (1933), the washing machine had been placed in an apartment building where it was used by plaintiff who suffered an injury similar to the one in this case. However, there was no showing of any instructions by the seller that should have been followed by the user and the plaintiff failed to offer any evidence of a defective operation in the machine such as was described in this case. Under these conditions there followed a directed verdict for defendant, since there was no evidence of a defect which was or should have been known to the defendant.

In Shramek v. General Motors Corp., 69 Ill App2d 72, 216 NE2d 244, the plaintiff was injured in an automo-

bile accident when a tire blew out. The car had been junked and the tire was not produced and nothing was shown as to its condition during the trial. The court held that blowouts can be attributed to myriad causes, and in the absence of proof of a defect in the tire, the plaintiff could not recover.

None of these citations are similar to the present case. Here there can be no question that the machine was defective, and that the defect caused injury when the machine was being operated according to the proprietor's instructions.

■ ■ In our opinion the jury was justified under these facts in finding the defendant was negligent in its inspection and maintenance of a machine known to have served its normal useful life, and in directing the user to act in a certain way without ascertaining that it would be a safe procedure. The defendant was under a duty to use due care to prevent injury to an invitee.

■ ■ With respect to the proper procedure on the motions filed in this case, the present rule in Illinois is that verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R. R. Co., 37 Ill2d 494, 229 NE2d 504.

The allowance of the motion for judgment notwithstanding the verdict against Klean-Rite was error and that ruling is reversed and judgment is entered here for plaintiff against the defendant, Klean-Rite, Inc., in the sum of $4,500.

Affirmed in part and reversed in part, with judgment here.

ALLOY, P. J. and STOUDER, J., concur.