Mrs. Joel LAMBERT d/b/a LAMBERT SEED
COMPANY v. J. D. MARKLEY and
Marie MARKLEY

73-144                                  503 S.W. 2d 162

Opinion delivered December 24, 1973
[Rehearing denied January 28, 1974.]

*Kirsch, Cathey, Brown & Goodwin,* for appellant.

*Branch, Adair & Thompson,* for appellees.

CONLEY BYRD, Justice. Appellant, Mrs. Joel Lambert, d/b/a Lambert Seed Company, used a two-ton Dodge truck equipped with a "cheater" axle[1] in the operation of her seasonal seed business. While the truck was being driven along the highway near a railroad siding running parallel thereto, the right rear duals from the "cheater" axle became detached, rolled across the ground between the highway and the railroad siding and struck appellee, J. D. Markley, a member of a train crew at work on the siding. Mr. Markley was taken to the hospital where he remained for some time. The railroad employees picked up the dual wheels and transported them to the train station in Paragould where they remained in the control of the railroad company for several days. The driver of appellant's truck did not know that the wheels had become detached until he was stopped at Paragould, several miles from the scene of the accident.

The complaint alleged, and evidence was submitted to the jury upon, the issues of res ipsa loquitur and the specific negligence allegations that appellant failed to maintain her vehicle in a safe operating condition and failed to attach the dual wheels to the truck in such manner to keep the hub and wheels from separating from the truck. There was a dispute in the evidence with reference to the presence or absence of a lock washer required to keep the wheels attached to the truck. However, the trial court submitted the issues to the jury only upon A.M.I. 305, duty to use ordinary care, and A.M.I. 610, res ipsa loquitur. For reversal of a verdict and judgment in favor of Mr. and Mrs. Markley, appellant raises the issues hereinafter discussed.

POINT I. In contending that the trial court erred in giving the res ipsa loquitur instruction, appellant principally relies upon *Ford Motor Company* v. *Fish,* 232 Ark. 270, 335 S.W. 2d 713 (1960). In that case Fish, a game warden, was driving a new Ford pickup which allegedly

---

[1]This axle sometimes referred to as a tandem axle permits the truck to haul a greater weight under the State's truck licensing laws.

left the highway and caused personal injuries because a defective brake grabbed the right front wheel. Upon proof that the brake mechanism was bolted together at Ford's factory and that it had not been tampered with, the trial court there submitted the issues to the jury on a res ipsa loquitur instruction. We there held the instruction erroneous, but in doing so we neither added to nor qualified the res ipsa loquitur doctrine.

When we remember that the res ipsa loquitur doctrine is based in part upon the theory that the defendant either knows the cause of the accident or has the better opportunity of ascertaining it, it can be readily seen that the case of *Ford Motor Company* v. *Fish, supra,* does not support appellant's position. We there pointed out not only that Fish had not made the necessary showing that he was not also negligent, since he was operating and in possession of the automobile at the time of the injury, but that since the average auto repairman could determine the exact nature of the malfunction of the brake mechanism by merely removing some bolts, the cause of the malfunction could be as easily determined by Fish as by Ford Motor Company. That decision was in accord with the authorities generally which state that if the plaintiff has equal or superior means of information, the doctrine will not apply. See Annotation 46 A.L.R. 2d 110.

In the case before us, Mr. Markley is not in a position to have equal or superior means of information as to the cause of the wheel becoming detached. Even if we assume that the proof shows that the lock washer had been left off the wheel and that caused the wheel to become detached from the truck, that in itself would not establish negligence on the part of appellant. Still the appellant had the better opportunity to have access to all the information as to why her driver did not discover the loosened wheel before it became detached; who placed the wheel on the truck in the first place; whether she had caused proper inspection to be made to see if the wheel was properly secured for operation on the highways; and who could have assembled the wheels without the lock washer being in place. Of course the appellant here furnished proof to the effect that the lock washer was not missing, and, under these circumstances, what we said in *Moon Distributors* v. *White,* 245 Ark. 627, 434 S.W. 2d 56 (1968),

in quoting from *Cassady* v. *Old Colony Street R. Co.,* 184 Mass. 156, 68 N.E. 10, 63 L.R.A. 285 (1903), is most appropriate, to-wit:

> "It is true that, where the evidence shows the precise cause of the accident . . . there is, of course no room for the application of the doctrine of presumption. The real cause being shown, there is no occasion to inquire as to what the presumption would have been as to it if it had not been shown. But if, at the close of the evidence, the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon presumptions, unless they are satisfied that the cause has been shown to be inconsistent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumption applicable to it."

When the facts are here analyzed, we must conclude that the trial court did not err in giving the res ipsa loquitur instruction. The annotator in 46 A.L.R. 2d 110 points out that a great majority of the courts from other jurisdictions hold that res ipsa loquitur is proper in the case of a detached wheel.

POINT II. Having determined that the case was properly submitted upon the res ipsa loquitur issue, it follows, without further discussion, that the trial court did not err in refusing a directed verdict.

POINT III. Appellant contends that the trial court erred in allowing appellees on direct to read from the deposition of J. C. McDaniel on the theory he was a "managing agent." Different authorities are cited both by appellant and appellees to support their respective contentions that McDaniel was or was not a managing agent within the provisions of Ark. Stat. Ann. § 28-348(d)(2) (Repl. 1962). We need not here determine whether Mr. McDaniel was a "managing agent" for he later took the witness stand and testified to the same facts developed in the deposition. Consequently, the record demonstrates that reading of the deposition was not prejudicial.

POINT IV. Appellant asked the court, in accordance with A.M.I. 603, to instruct the jury that "the fact that an injury occurred is not, of itself, evidence of negligence on the part of anyone." The court declined to give the instruction apparently on the basis that it to some extent conflicted with the res ipsa loquitur instruction which permitted the jury to draw an inference of negligence "from the manner in which the alleged injury occurred."

The drafters of the Arkansas Model Jury Instructions recognized that A.M.I. 603 is inappropriate when Ark. Stat. Ann. § 75-623(c) is applicable. That statute provides: ". . . that if such driver is involved in a collision with a pedestrian in a crosswalk or a vehicle in the intersection after driving past a yield sign without stopping, such collision shall be deemed prima facie evidence of his failure to yield the right-of-way." We can see little difference between the prima facie case raised by the statute and that involved in the detachment of a wheel from a moving vehicle upon a highway. Consequently, where, as here, the case is submitted to the jury only upon the issues of res ipsa loquitur and ordinary care (as distinguished from specific grounds of negligence such as speed and control), we cannot say that in view of the other instructions, the trial court committed prejudicial error in declining to give the instruction.

POINT V. Appellant also contends that the trial court erred in refusing to give her requested instructions Nos. 1 and 2 which stated:

"1. In connection with the alleged negligence of Lambert Seed Company, Lambert Seed Company is not liable for hidden or latent defects in their trucking equipment which were not or could not have been discovered by ordinary care and ordinary maintenance. If you find from a preponderance of the evidence that the defect which caused the wheel to become dislodged from the Lambert truck was a latent defect, or one which could not have been discovered by ordinary care and ordinary maintenance, then you are instructed the Lambert Seed Company is not guilty of negligence which was proximate cause of the accident.

2. Lambert Seed Company, as the owner of a motor

vehicle, is not liable for injuries resulting from the defective condition of their motor vehicle in the absence of negligence on their part. Lambert Seed Company was required to exercise reasonable care to see that their vehicle was in proper operating condition and must have exercised reasonable care in the inspection of their vehicle to discover any defects that might have prevented proper operation. If you find from a preponderance of the evidence that Lambert Seed Company and its agents or employees could not have discovered the defect which was to cause the wheel from becoming detached by reasonable care and inspection of the vehicle, then Lambert Seed Company is not guilty of any negligence which was a proximate cause of the occurrence."

The Committee in its introduction to the Arkansas Model Jury Instructions points out the guides that it used in drafting the instructions therein contained. One of those guides is that an instruction must be unslanted. In the per curiam order of April 19, 1965, we pointed out that:

". . . Whenever A.M.I. does not contain an instruction on a subject upon which the trial judge determines that the jury should be instructed, or when an A.M.I. instruction cannot be modified to submit the issue, the instruction on that subject should be simple, brief, impartial, and free from argument."

In commenting on what is impartial and unslanted the Committee said:

"To be unslanted the instructions must be an objective statement of the law. They are to be the court's instructions and not partisian instructions sounding first like the plaintiff's counsel and then like defense counsel. . . . "

Even a casual reading of the two instructions offered by appellant demonstrates that they are slanted toward the defendant. For this reason the trial court properly refused the instructions.

Affirmed.

HARRIS, C.J., not participating.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I concur in all the majority opinion except that part relating to Point IV. As to that point, I think the failure to give AMI 603 was reversible error. In order to put the matter in proper perspective, the wording of the instruction offered is of considerable importance as is the wording of Instruction 12 given on res ipsa loquitur, which was patterned after AMI 610. They read:

DEFENDANT'S REQUESTED INSTRUCTION—AMI 603

The fact that an injury occurred is not, of itself, evidence of negligence on the part of anyone.

*Instruction No.* 12: In addition to the rules of law I have just stated with respect to ordinary care and negligence, there are situations in which a jury may, but is not required to, *draw an inference of negligence from the manner in which the alleged injury occurred.* J. D. Markley and Marie Markley attest that this case involves such a situation, and therefore, have the burden of proving each of the two essential propositions.

First, that the alleged injury was attributable to the truck and dual wheels which have been under the exclusive control of the defendant, Mrs. Joel Lambert doing business as Lambert Seed Company or her employees.

Second, that in the normal course of events, *no injury would have occurred if the said defendant had used ordinary care* while the truck and dual wheels were under her exclusive control.

If you find that each of these two propositions has been proved by the plaintiffs, then *you are permitted, but not required, to infer that the defendant was negligent.* (Emphasis mine.)

Just how there is a conflict between these instructions escapes me, and no one has offered any plausible explana-

tion. A simple reading of the two together (with particular reference to the portions of the res ipsa loquitur instruction I have underscored) clearly demonstrates that not only is there no conflict, but the two are completely harmonious and could not cause any confusion. This clearly suggests that the drafters of AMI 603 and 610 prepared them so they could be given without conflict. If they had thought AMI 603 should not be used where a case for the application of res ipsa loquitur arose, it is indeed strange that no caution was given in the "Note of Use" as was frequently done in such circumstances and as was done with respect to AMI 603 in reference to cases when Ark. Stat. Ann. § 75-623(c) (Repl. 1957) is applicable. To infer that these experienced, dedicated, alert and perceptive judges and practitioners were aware of a potential conflict with this statute, but unconscious of the implications of AMI 610, which with AMI 603 and fourteen other model instructions form "Chapter 6, Specific Factors Affecting Negligence and Defenses," seems absurd to me.

A look at the basis for the two instructions will lead to the conclusion that there is no conflict. AMI 603 is based upon such cases as *St. Louis-San Francisco Ry. Co.* v. *Ward,* 197 Ark. 520, 124 S.W. 2d 975 and *International Harvester Co.* v. *Hawkins,* 180 Ark. 1056, 24 S.W. 2d 340. In *Ward,* the rule was articulated. We said:

> Negligence is never presumed but the burden is on the party asserting it to establish the fact by a preponderance of the evidence. Nor is it to be presumed from the fact of injury and no one is liable in damages for a purely accidental injury.

In *Hawkins,* we said:

> It is next contended by the appellant that negligence cannot be inferred merely from the injury. This is also a rule of law so well established that we need not cite authorities in support of it. While negligence cannot be inferred merely from the injury, negligence may be inferred from facts shown in evidence. And the facts here are sufficient to justify the jury under

proper instructions to find that the appellant was guilty of negligence and that this negligence caused the injury.

Thus the drafters of AMI 603 demonstrated quite clearly by their citation of these two cases that the mere fact that *negligence might be inferred from the facts in evidence* would not preclude the giving of this instruction. See also, *Great Atlantic & Pacific Tea Co.* v. *Gwilliams,* 189 Ark. 1037, 76 S.W. 2d 65, wherein it was said that negligence, or facts from which it may be inferred, must be proved. In other words, negligence must be proved, either by direct or circumstantial evidence.

But what does AMI 610 say? It says that *if* the jury finds that the requisite facts are shown, it is *permitted* but *not required to infer* that the defendant was negligent. This is a positive indication that the two instructions, drafted with *Hawkins* in mind, were intended to be, and are, harmonious, and that AMI 603 should be given, even if the case goes to the jury on res ipsa loquitur alone. Before a jury is even *permitted to infer* that there was negligence from the fact of injury, it must first find that the thing which produced the injury was under the exclusive control and management of the defendant and that the occurrence is such that, in the ordinary course of events, does not happen, if due care has been exercised. *Delta Oxygen Co.* v. *Scott,* 238 Ark. 534, 383 S.W. 2d 885. In *Martin* v. *Aetna Casualty and Surety Co.,* 239 Ark. 95, 387 S.W. 2d 334, we pointed out that evidence showing that there was an injury to a defendant to whom the plaintiff owed a duty of using due care, that the injury was caused by an instrumentality under the control and management of the defendant and that the accident causing the injury was such that in the ordinary course of things would not occur if those having control and management used proper care, in the absence of evidence to the contrary, would be "evidence that the accident occurred from the lack of that proper care." Thus, the fact of injury is not evidence of negligence, even in a res ipsa case. It is only one of the circumstances essential to the permissible inference, and is to be considered along with other evidence.

Examination of the purpose and function of the doctrine of res ipsa loquitur confirms my position and the requirements of AMI 610. Negligence may be proved by circumstantial, as well as direct, evidence. Res ipsa loquitur is nothing more than one type of circumstantial evidence. Prosser, Torts (Fourth Edition) 213, 228, §§ 39, 40; Restatement of the Law, Torts Second, p. 157, § 328D, Comment b; Leflar and Covington, Res Ispa Loquitur in Arkansas, 8 Law School Bulletin 43. In order to make a circumstantial case, not only must the injury be shown, but there must be evidence of the requisite attendant circumstances. See above authorities and Prosser, pp. 214, 218, § 39.

I will not elaborate extensively on the distinction between the admonition against use of AMI 603 in cases where Ark. Stat. Ann. § 75-623(c) is involved and res ipsa loquitur. Of course, res ipsa loquitur is not a statutory declaration. It does appear, however, that the statute in question goes beyond the permissible inference arising from a showing of the elements under which res ipsa loquitur may be invoked. Prima facie evidence in the sense of that statute seems to imply that a presumption or compelled inference arises when the requisite facts are shown, unless there is evidence to the contrary. In this respect, the statute should have the same application as, for instance, former Ark. Stat. Ann. § 73-1007 (Repl. 1957), which was held to establish a rebuttable presumption of negligence which applied in the absence of contrary evidence. *Missouri Pacific R. Co.* v. *Briner,* 213 Ark. 18, 209 S.W. 2d 106. Barnhart, Use of Presumptions in Arkansas, 4 Ark. L. Rev. 128, 132, 150. On the other hand, when res ipsa loquitur applies, the inference is only permissible and a jury is free to hold against a plaintiff, even though the defendant does not introduce any evidence. See Barnhart, Use of Presumptions in Arkansas, 4 Ark. L. Rev. 128, 133.

Although I firmly believe that AMI 603 should have been given even if the evidence had not justified the submission of the question of negligence based upon direct evidence of specific acts or omissions, the submission of the case on both approaches, i.e., res ipsa loquitur and

specific negligence, seems to me to have required that it be given. This instruction negates the all too prevalent thought that if injury occurs someone should pay. If a plaintiff chooses to enter the arena of the courtroom riding both res ipsa (circumstantial evidence) and specific acts of negligence (direct evidence), there is no reason why a defendant should be penalized by being deprived of any protective device he would otherwise have against either.

I respectfully submit that the judgment in this case should be reversed for refusal of appellant's requested instruction based on AMI 603.